Good morning again, members of the court. Unless the court has a different preference, I plan to focus on the merits of the juror bias claim. Sure, go ahead. This case is really about whether the trial court clearly erred in rejecting sworn testimony by jury number four that in the middle of trial for murder, she realized that a former colleague of hers whom she knew and liked from work at a Sacramento Bee was also the sister of the homicide victim Alan Qualls. And that caused her to lose her ability to be fair and partial. And if that sworn testimony was credited, I think my client would have been entitled to a new trial because his Sixth and Fourteenth Amendment rights were violated. But the district court found the testimony not to be credible. You mean the state trial court? State trial. Yes, thank you. Right. So what do we do with that? I mean, what indication is there in the record that that finding of lack of credibility is clearly erroneous? Several things. Number one, obviously clear error is a relatively high burden for me to overcome. But this is one of those rare cases where I think it is, you know, it is overcome. First, there were several misstatements of the record that the trial court made in announcing the decision, which would indicate that would support a finding of clear error. We discussed those in the briefing, and I think the biggest misstatement is how the trial court framed the evidence. The court stated that this comes down to a credibility contest between juror number four and the alternate on the one hand, and the rest of the jurors on the other hand. And that is, this is on page, bottom of page 577 and going to the top of page 578 of the excerpts of the record. And the court framed it as a credibility contest between those two individuals on the one hand and everybody else on the other. The problem is that it is pretty clear that juror number four said that the only two people on the jury that I reported this to were juror number two and the alternate. Juror number four never said that she reported this to anybody else. Now, if that's true, how can that possibly be a credibility contest with other jurors? If she didn't tell them, why would they have any reason to support or disprove what she's saying? She said, I told two people. One of those people did corroborate her account more or less fully. Not to 100 percent, but I think pretty close, and I'm talking about the alternate. You know, obviously, juror number two gave only a partial corroboration, because she said, yes, she mentioned this during trial, but no, I don't recall her saying that this caused her to lose the ability to be fair and partial. But my point is, it's not a credibility contest between those two people and everybody else. And this indicates that the trial court must have misrecalled the testimony of juror number four. Well, the court also, though, had the opportunity to see the witnesses in person, which is something that no review in court can do. Absolutely. And also said that it was the judgment of the judge that juror number four had buyer's remorse about the verdict and was trying to figure out a way to undo it and would have been willing to do so by making this up. How do you counter that essentially sort of demeanor-based finding? Well, Your Honor, I would respectfully disagree that it's a demeanor finding, because the court made no reference to demeanor specifically. The court obviously stated what Your Honor just stated, but I would submit that there is no reference to demeanor. More importantly, aside from the fact that juror number four first reported this in the middle of trial, at that point, you know, there is no deliberations, there is no verdict, you know, buyer's remorse wouldn't come into play. The trial court's decision never accounts for that fact. You know, even, you know, I will submit that there is some evidence that juror number four had some reservations about, sort of belayed reservations about, you know, her vote for murder. I think that's more or less undisputed. The problem is, number one, she first voiced them before there were any deliberations. That was a testimony from her, from the alternate, and from juror number two. So the buyer's remorse theory or finding, however you want to frame it, that doesn't account for the fact. She didn't try to stop the trial. Right. She considered it. Right. She continued to. Right. Do you have any authority? I'm not an expert in criminal defense, but I couldn't find any cases where a juror had tried to get a mistrial because of her, of his or her bias. One would think if one were biased, one would be quiet and simply participate. True. True. Well, right. I think most people, this is what they would do. Yeah. And I think the fact that she came forward, that would sort of, that's a circumstantial evidence that would counter any finding that she has buyer's remorse, because the juror came in, volunteered her bias, potentially subjected herself to perjury, either based on violation of her oaths as a juror, or if the trial court were to find that she was willfully false in a new trial motion, that's clearly sworn. So she's subjecting herself to perjury and, frankly, humiliation and admitting violation of the court's instructions, you know, all supposedly to vindicate buyer's remorse about, you know, concerning a person to whom she has no reported connection. There's no evidence that she, you, my client, had any social or familiar connections. As far as we know, they're complete strangers. Right. The, I think what's, the passage that supports the court's finding is when the juror says it did in retrospect. I mean, she knew about it before, and then after the verdict, she said, well, I think in retrospect, I was influenced by it. But I think she'll, I'm sorry, go ahead, Your Honor. No, I mean, I just, I think if you're going to highlight something that would support the court's finding other than demeanor, it would be her whole testimony that she came to the realization after the verdict that this relationship may have affected her. Right. But she also told, at least the alternate, that during middle of trial that she lost her ability to be fair and impartial. Yeah. Right. She did mention, she did, I recall that there was a phrase in the record where she says, in retrospect, it did. But I think she clarified under further questioning, and I think it's right on the same page, that she first realized it in the middle of trial, but I think that it came back to her before or after trial, which is not necessarily inconsistent with her. It just came back to her. Right. It may have been amplified after the verdict, but, you know, there's definitely evidence that it was first arisen in the middle of the trial where, you know, the buyer's remorse rationale wouldn't come into play. Okay. I think we have your argument in hand. Do you want to save some time for the buyer? Yes, Your Honor, unless the Court has questions. Okay. Very good. Thank you. Good morning. May it please the Court. Daniel Bernstein, Deputy Attorney General, on behalf of Respondent, the Warden. I would like to make a couple of comments about the procedural aspect of this case, particularly because it affects the standard of review. It's our position that the standard of review here is the AEDPA, the A-E-D-P-A, and that is because we have a merits decision in the State Court. Now, opposing counsel argued that that merits decision was essentially wiped out when the California Supreme Court denied his last State habeas petition with a citation to Duval, People v. Duval. And his belief is that that is a procedural default, and therefore, that's the last decision of the State court, and that is what's binding on the Federal court. And I respectfully disagree. People v. Duval. This Court just this week decided a case on a similar posture, Cross v. Sisto. In that case, we had a citation to Swain and Duval, and this Court held that a combined the petition was not was procedurally deficient, and that petitioner has an opportunity to come in and correct the deficiency. Counsel, as a practical matter, though, whether we call our level of deference looking at the unreasonableness of the State court's factual finding under AEDPA or we look at it as clear error, is there a, I mean, I know it's different verbiage, but is there really a practical difference in terms of how much deference we owe to the State trial court that had this lengthy hearing and made factual findings? In this particular case, I don't think it makes much of a difference. It seems to me if it were a legal question, it may well make a difference. But here, we're really talking about a factual finding, and we would owe deference to the trial court's finding to the Federal trial court, and here we have the same situation. That's true. I just, I would be loathe in my duties if I did not urge this Court to say that we have a decision on the merits and not a decision. And there are other cases that you're concerned about. And People v. Duval, if I can just finish the train of thought. People v. Duval stands for many things. It doesn't just stand for lack of particularity. It also stands for failure to present the supporting documentation and failure to make a prima facie case. And the California Supreme Court has said if you do not make a prima facie case and we deny it, that's a denial on the merits. So it's possible here that the Duval citation alone indicated a merits decision, in which case we'd still look to the trial court. Was this, just procedurally, this was, this issue was raised for the first time on State habeas? Actually, it was. Or was it appealed? It was, the genesis was, it was a motion for a new trial based on juror misconduct. So it was in the record on direct appeal. Yeah. All the transcripts for the evidentiary hearing. But was it argued on direct appeal? It was not raised on direct appeal as an issue on direct appeal. It was first raised as a habeas petition in the Third District Court of Appeal, which denied it. And then it was raised to the California Supreme Court, which denied it with a citation to Duval. Well, on the merits, go ahead. I was about to address the merits. Well, on the merits, it's sort of a peculiar case because either the juror was actually biased, as she said, or she's a perjurer, neither of which gives one much comfort in terms of having a juror that's in, of course, a structural error, if that's true. But isn't, are those the two alternatives we're talking about? I wouldn't say that she was necessarily a perjurer. But I think that there's plenty of evidence in the record to support the trial court's determination that this juror was trying to undermine the verdict any way she possibly  could. Now, we have to keep in mind that this claim that she was biased was one of several claims of juror misconduct that she raised in her declaration. And she had stuff about being, people being angry with her and she wasn't feeling well and medicated for her tooth and on and on. Exactly. The other jurors weren't letting her deliberate. The trial judge, that they were threatening to report her. All of those claims were, not all, most of them were aired at the evidentiary hearing. And the trial court found that there was no corroboration for any of those. And that's why. So I get back to my statement. She's, you know, she's either not telling the truth or she's biased. Well. Now, that may not get the defendant anywhere, but it certainly gives me some discomfort. I mean, I think she's biased in the sense that she was biased in trying to undo what the jury had done. But if we wanted, in this claim, to show that she was actually biased, that she was not able to be fair as a juror, there's not evidence in the record to support that. The evidence in the record shows that she expressed concerns. Well, if she had been believed, there would have been. Well. If the finding had been, yes, you were biased and this person, you know, wouldn't have had a fair trial. So really it seems to me to hinge on whether the trial court's factual finding is unreasonable. Well, I agree. I agree. But when I was ‑‑ I guess I was approaching it in a slightly different way. And she claimed after the verdict that she was biased. And that is why she voted to convict. But there was no evidence in the record that she said expressly and unequivocally at any time before the verdict that she could not decide this case fairly. In fact, she mentioned it to the alternate juror. And the alternate juror, well, she said, I see someone in the audience who I recognize. I'm a little concerned. The alternate juror said, well, if you think that's going to be a problem, you should report it to the judge. She did not report it to the judge. She remained silent. It was a month before she came forward with the factual evidence. So you're saying that's circumstantial evidence that supports the trial judge's finding that this was an afterthought? Yes. In the real world, though, if she'd come forward and disclosed this to the judge, then likely one of the attorneys would request that she be removed. That's possible. Yeah. That's possible. But it's also possible that through further examination they could have found out that it's not really affecting her ability to be fair just because she recognized somebody who had a ñ who she had a tangential relationship with that wasn't a witness in the case. That was just some ñ she sort of surmised she was related to the victim. Because she left the room crying. Right. Reasonable assumption. Reasonable assumption. But, you know, I was thinking about this and it occurred to me that in trials, particularly murder trials where we have victims who don't survive, there's often relatives who come into the courtroom and they sit in the courtroom and they sometimes cry or lose their composure or whatever. And the jurors see this. And the jurors see this. And oftentimes this makes an impression on the jurors. And they might in some way have some sympathy then for the victim because they see the grief that the family is going through. That doesn't render them biased against the offense. No. But in this case, whether she was her union rep or whatever the relationship was, that may have changed the usual calculus on these type of reactions. Well, that was sort of in dispute also because the woman herself, the sister who ran out of the courtroom denied that she was her union rep and said she barely knew her. The other thing is that, you know, this juror said, as Your Honor pointed out, that it was only in retrospect that she thought this is what affected my vote. And when you look at what the – what occurred in the deliberations as reported by this juror, what happened was she went in there arguing for involuntary manslaughter. And that wasn't even on the table. The jury wasn't even instructed on involuntary manslaughter. And then she advocated for voluntary manslaughter. And then she felt that the other jurors were ganging up on her because they all wanted to go for murder. Now, this woman, the record shows that this juror was the defendant's biggest advocate in the deliberations. And now she's – And she still is. Apparently. That is her main insistence. I mean, that's what your theory, the theory of the trial judge was. Right. And so, you know, if she's – how can she then be biased against him? I mean, that's the theory of this claim, that seeing this person in the court rendered her biased against the defendant when all of her actions in the deliberations indicate that she was trying to get him the most lenient sentence possible. It just doesn't add up. And that's why the trial judge had plenty of reason to find that she was not credible. I think we have your argument, Your Honor. Okay. All right. I'll submit it. Thank you very much. Rebuttal. I have two points. One is that a lot of arguments counsel have made were not actually findings that the trial court have actually made in rejecting the juror's testimony. The trial court was very specific as to why it was rejecting testimony. The court said that, I find the juror incredible because she had biased remorse and she colluded with the alternate basically to fabricate their stories. We have specific findings. Those either stand up based on evidence of the record or they don't. What I don't think there is any authority to do is do what counsel suggests, to see if the record could be manipulated to make different findings to sort of support sort of the basic finding of no bias but ignoring the specific findings of fact that the court had actually made. If the court made those findings that counsel was just talking about, that would be one thing. Then maybe or maybe not I would be making the same argument. The problem is that the court had not made those findings. So I think all this court can do is look at the findings that were made and see they are either supported by evidence in the record or they are not. And whether the court made specific characterization of the record, that's either accurate or it's not. But the court cannot make new additional findings on appeal. And my second point was I respectfully disagree with counsel on the application of AEDPA. Judge Grebel may be correct as a practical matter. It may not make much difference. Either way you owe a great deal of deference to the trial court's findings of historical fact. But as a matter of, as an academic question, there was, the last reason state court decision was an invocation of the Duval Bar. I cannot imagine under what possible scenario that's a merits determination. It just isn't. I don't want to repeat the cases that were recited in my brief. We've addressed it there. Unless the court has any questions, I'm ready to submit. Thank you very much for your arguments. The case just heard will be submitted for decision. And I appreciate the succinctness of your arguments this morning.
judges: Schroeder, Thomas, Graber